Turley, J.
delivered the opinion of the court.
This is an action brought by Lassater and Temple against Stamper to recover the sum of two hundred dollars, which they allege is due to them as a reward for arresting Granville B. and Alfred D. Alexander, charged with murdering the son of
*114 The bill of exceptions discloses the following state of facts:
Some time in the month of September, 1843, the son of Stamper was killed, and himself severely wounded by the two Alexanders. On the evening after the unfortunate affray, there were several persons at Stamper’s house — he was lying on a bed laboring under great bodily pain from his wounds, and great mental anguish for the loss of his son, who was at the time a corpse in his house, his wife and daughters half distracted. The subject of arresting the Alexanders was spoken of. Stamper said that he did not expect they would be taken that night; that he would put out a reward ahead of them; that he got up and went into the yard where most of the company were assembled, and observed that he would give a reward of two hundred dollars to any person who would apprehend the Alexanders. To this remark one of the company observed, “Mr. Stamper, I don’t want your money;” to which Stamper replied “Gentlemen, I did not mean it for you.”
This is all the proof as to the reward for the arrest being offered by Stamper.
Joseph Newman, the sheriff of the county, deposes, that on the evening of a day in September, 1843, he received a message from Stamper informing him that his son had been murdered and himself severely wounded, and requesting him to come immediately to his house. Witness having just returned from, Nashville, and being much fatigued, declined going, but sent his deputy, Jonathan Lassater, one of the plaintiffs, who, on the next morning, delivered to him the bodies of the two Alexanders, whom he had arrested without process.
This was all the testimony in the case. The court charged the jury, “that to entitle the plaintiffs to recover against the defendant, he must have made himself liable to them by contract. If the Alexanders murdered his son and fled, and were arrested by the plaintiffs, the defendant, in the absence of a contract to that effect, would not be bound to pay them any reward. If the Alexanders killed defendant’s son and fled, and upon that defendant offered a reward of two hundred dollars to any person who would arrest them, saying at *115 the same time that he did not make his proposition to any person who was present, and the plaintiffs were present, they would not be entitled to a recovery; that if the defendant offered a reward of two hundred dollars to any person who would arrest the Alexanders, and the plaintiffs after the offering the reward by the defendant, but before they knew that it had been offered, arrested the Alexanders, for the murder, the fact that they were at the time ignorant that the reward had been offered, would be no ground of defence against a suit brought for its recovery.”
In this charge, the whole court agree that there is error. The Judge in the first place charged the jury, that there must be a contract of reward to be paid before a suit could be maintained for the recovery of the reward. To make a good contract there must be an aggregatio mentium, an agreement on the one part to give, and on the other to receive. How could there be such an agreement if the plaintiffs in this case made the arrest in ignorance that a reward had been offered? The arrest would have been mpde not for the reward, but in discharge of the public duty.
But there are other objections arising out of the proof of higher character than this error in the- charge of the Judge.
We do not think that the proof establishes the fact that a reward of two hundred dollars was actually offered.
It appears that the defendant and his family were in deep affliction at the loss of his son, that he himself was laboring under the effect of severe wounds received from the same persons who had killed his son; that when the arresting of the persons who had perpetrated the outrage, was spoken of, he observed that he would give two hundred dollars to have them arrested. But to a remark of one of the company that he did not want any of his money, he said he did not intend it for them. Who did he intend it for then? for others who were not present? How did he suppose they were to know it? He made no public offer — he authorized no one to make it for him. We are constrained to believe that what is called an offered reward of two hundred dollars, was nothing but a strong expression of his feelings of anxiety for the arrest of those who had so severely injured him, and this *116 greatly increased by the. distracted state of his own mind, and that of his family: as we frequently hear persons exclaim, Oh! I would give a thousand dollars if such an event were to happen, or, vice versa. No contract can be made out of such expressions; they are evidence of strong excitement, but not of a contracting intention.
But furthermore, Jonathan Lassater, in making the arrest, was in the line of His duty; he was deputy sheriff of the county where the outrage had been committed; he had been sent by the principal sheriff to attend to it in his stead.— Under such circumstances, a majority of the court hold that as a matter of public policy, he would not have been entitled to claim the reward had it been offered.
Upon the whole view of the case then, we reverse the judgment of the court, and remand the case for a new trial.